FILED

Robert M. Scholnick, CSB No. 64568
*E-mail:   RScholnick@sti.net*
17422 Chatsworth St.
Granada Hills, Ca. 91344-5717
Telephone: (818) 368-9002
Facsimile: (818) 368-0543

Attorneys for Plaintiff

10 AUG 11  AM 11: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOREB, INC. dba GUN WORLD

                   Petitionr,

    vs.

EARL T. KLECKLEY, Director of Industry
Operations, Bureau of Alcohol, Tobacco,
Firearms and Explosives,

                   Respondent.

CV10 5978 GAF (MANx)

Case No.:

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PETITIONER'S Request FOR A
PRELIMINARY INJUNCTION, STAYING
EFFECTIVENESS OF THE
REVOCATION OF ITS FEDERAL
FIREARMS LICENSE DURING THE
PENDENCY OF THIS LITIGATION**

# I. BACKGROUND

As alleged in the Petition for Judicial Review filed by Joreb, Inc. dba Gun World and as further set forth in the Affidavit of its President, Paul Cole, Petitioner is a business primarily engaged for many years past in the selling, trading, servicing and repair of firearms in Burbank, California. The authority to pursue that business depended on Petitioner maintaining its federal firearms license. However, on October 8, 2009, the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") sent a Notice of Revocation to Petitioner notifying it that its federal license as a dealer in firearms, other than destructive devices, was revoked. Petitioner timely requested a hearing, pursuant to 18 U.S.C. § 923(f)(2), which was held on February 25, 2010. The hearing was presided over by Cindy Boyko, an ATF industry operations investigator from California, who reports to the director of industry operations for the Los Angeles Field Division. As is the nature of such hearings, Petitioner had no subpoena powers and testimony was not under oath. (See Affidavit of Paul Cole ("Cole Affidavit"), paragraph 6). On July 1, 2010, Petitioner received a Final Notice of Denial of Application or Revocation of Firearms License (hereinafter, the "Final Notice") from Respondent, Earl T. Kleckley, Director of Industry Operations for the ATF's Los Angeles field office, informing it that it must cease operations. Cole Affidavit, paragraph 7. The Final Notice asserted 16 grounds for revoking Petitioner's license;

      1)    Petitioner willfully violated 18 U.S.C. § 922(m) and § 923 (g)(1)(a) and 27 C.F.R. § 478.125(e) for failing to timely record acquisition of 47 firearms in the A&D book;

      2)    Petitioner was alleged to have violated 18 U.S.C. § 922(m), § 923(g)(1)(a) and 27 C.F.R. § 478.125(e) by failing to timely record the disposition of 424 firearms in the A & D book;

      3)    For identifying identical firearms twice in the A&D book in violation of 18 U.S.C. §922(m);

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 2**

4)      For failing on 3000 occasions to properly record acquisition information in the A&D book in violation of 18 U.S.C. §§ 922(m) and 923(g)(1)(a) and 27 C.F.R. §§ 478.125(e);

5)      That on nine occasions Petitioner failed to have purchasers accurately and completely fill box Section A of Form 4473 in violation of 18 U.S.C. §§ 922(m) and 923(g)(1)(a) and 27 C.F.R. §§ 478.21 and 478.124(c)(1);

6)      That Petitioner had, on nine occasions, violated 18 U.S.C. §§ 922(m) and 923(g)(1)(a) and 27 C.F.R.§§ 478.21 and 478.124(c)(1), by failing to have purchaser complete information regarding place of birth on Form 4473;

7)      That Petitioner violated 18 U.S.C. §§ 922(m) and 923(g)(1)(a) and 27 C.F.R. §§ 478.21 and 478.124(c)(1) on 20 occasions when it failed to record the purchaser's state of residence in Form 4473;

8)      That Petitioner violated 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 C.F.R.§§ 478.124(c)(1) by failing two times to have purchaser certify that they were not prohibited;

9)      That Petitioner violated 18 U.S.C. § 923(g)(1)(A) once when it failed to record type and number of identifications;

10)     Petitioner violated 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.21 and § 478.124(c)(3) 13 times when it failed to enter additional residency information required of aliens;

11)     Petitioner on nine occasions failed to accurately record NCIS information on Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.102(b) and § 478.124(c)(3);

12)     Petitioner on five occasions erroneously recorded the date NCIS was contacted on Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.102(b) and § 478.124(c)(3);

**13)**     That Petitioner on five occasions failed to have the purchaser re-certify ATF Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.21 and § 478.124(c)(1);

**14)**     That Petitioner on two occasions failed to accurately record firearm identification on ATF Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.21 and § 478.124(c)(4);

**15)**     That Petitioner on five occasions failed to enter transferee's name and federal firearms number on ATF Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.21 and § 478.124(c)(5);

**16)**     That Petitioner on two occasions failed to sign and enter title or complete the date of transfer on ATF Form 4473 in violation of 18 U.S.C. § 922(m) and 923(g)(1)(a) and 27 U.S.C. § 478.21 and § 478.124(c)(5).

Cole Affidavit, paragraph 19.  Respondent took the position that the revocation of Petitioner's license was revoked effective August 2, 2010.  Cole Affidavit, paragraph 8.  Petitioner timely filed its petition for judicial review in this Court on August 11, 2010.

Although the effectiveness of the October 8, 2009 Notice of Revocation was suspended by operation of law while Joreb, Inc. sought administrative review of that decision by the ATF, the ATF's Final Notice of Denial of Application purports to revoke Joreb's license on August 2, 2010, only 31 days after the notice and well before the 60 day statute period in which Joreb would be entitled to determine whether to file a Petition for Review of that revocation.  Request was made on July 12, 2010 that Joreb be allowed to continue to operate under the terms of its original license at least until September 2, 2010, the end of the 60 day period in which a Petition for Review can be filed.  ATF did grant the extension to September 2, 2010, but have refused a further extension pending a judicial determination.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 4**

The September 2, 2010 effectiveness of the revocation of its license will result in Petitioner's financial destruction well before its suit is resolved by this Court. Along with financial damage, Mr. Cole describes the damage which has been done and which will continue to be done to Petitioner's intangible goodwill due to its inability to advertise, renovate its premises, respond to customer orders (including those placed by local police departments), and meet the needs of regular and new customers. Cole Affidavit, paragraphs 12 through 18. Respondent's administrative interests aside, the only true beneficiaries of such a situation are Petitioner's competition. Cole Affidavit, paragraph 16. Even if Petitioner's rights are continued, the competition has already gained significant advantages over Petitioner, and that situation can only worsen until Petitioner is eliminated from the marketplace. Vindication of its rights in this Court will mean little by then. Petitioner therefore requests the Court under Federal Rule of Civil Procedure 65(a) to preliminarily enjoin Respondent from enforcing the revocation of Petitioner's federal firearms license and to allow Petitioner to resume business under its license's original terms during the pendency of this litigation without the threat of violating federal law by operating without such a license.

## II. ARGUMENT

### A. PRELIMINARY INJUNCTION

> ... [T]he Ninth Circuit primarily employs the 'alternative' two-prong test applied by the Second Circuit... which provides that a preliminary injunction may be granted if the movant demonstrates either: (1) a probability of success on the merits and irreparable injury, or (2) serious questions going to the merits and that the balance of hardships tips sharply in its favor. The Ninth Circuit test also concurs with the 'sliding scale' approach under which the required degree of irreparable harm increases as the probability of success decreases.

Moore's Federal Practice 3D, § 65.22[5][ii], at page 65-70 (emphasis provided).

Thus, *Prudential Real Estate Affiliates, Inc.* v. *PPR Realty, Inc.*, 204 F.3d 867, 874 (9th

Cir. 2000), held that preliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor:

> These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.

*Id. See, also, Rodde v. Bonta,* 357 F.3d 988, 994 & n.8 (9th Cir. 2004).

In the case at bar, unless Petitioner is permitted to continue operations, the harm it will suffer will be irreparable. As demonstrated by Mr. Cole's Affidavit, about 90 percent of Petitioner's business depends on its ability to deal legally in firearms. Cole Affidavit, paragraph 11. Even if firearms now on order are added to Petitioner's existing inventory, Mr. Cole still estimates that Petitioner can conduct business for only about another two months ~ and that does not take into account the business that will be lost by being unable to respond to special orders from private citizens as well as local police officers for firearms not in inventory. Cole Affidavit, paragraphs 12 through 15. Petitioner's inability to operate legally will soon force it to begin laying off employees. Cole Affidavit, paragraph 17.

In addition to lost revenue, there has already occurred significant erosion of Petitioner's goodwill in the marketplace, a situation that worsens with each passing day. Its inability to fully serve its customers has left it no choice but to refer them to its competition and it is unlikely that damage to its competitive position in the marketplace can be easily repaired, if at all. Cole Affidavit, paragraph 18. Even though the Fifth Circuit applies a stricter test to requests for preliminary injunctions, (*See* Moore's Federal Practice 3D, § 65.22[5][f]), it nevertheless recognizes that a substantial loss of business may amount to irreparable injury if the amount of lost profits will be difficult or impossible to calculate, and that the loss of goodwill can, of itself, amount to such irreparable injury as to recommend a preliminary injunction. *Florida*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 6**

*Businessmen v. City of Hollywood,* 648 F.2d 956, 558, n.2 and n.3 (5th Cir. 1981). Harm to goodwill is considered such irreparable damage as to require injunctive relief because of the "extreme difficulty in uncertainty and restoring goodwill among the customers and regaining the business of customers who are being, and will be, induced away or lost" as a result of, in this case, Respondent's conduct. *Fireworks Spectacular, Inc.* v. *Premier Pyrotechnics, Inc.,* 86 F. Supp. 2d 1102, 1107 (D. Kan. 2000).

On the other side of the Ninth Circuit's "sliding scale" of hardship are the interests of Respondent and the ATF. Suspending the effectiveness of its revocation of Petitioner's federal firearms license during the several months needed to litigate this matter will inflict no monetary damage on Respondent or threaten their intangible interests. The only detriment to Respondent, should the Court grant a preliminary injunction is a delay in the enforcement of its decision. In this respect, it is relevant to note that the original October 8, 2009 Notice of Revocation was based on an inspection of Petitioner made during September 2007. Cole Affidavit, paragraph 6. The administrative hearing that Petitioner was entitled to was held on February 25, 2010 and, after that, Respondent needed nearly another three months to issue its Final Notice. Cole Affidavit, paragraph 7. None of this indicates any great urgency on the part of Respondent to remedy any situation threatening public safety or the integrity of the federal regulatory scheme for firearms. It is further relevant to note that *most* of the violations Respondent has based the Final Notice on concern oversights in paper record keeping. Nothing brought to Petitioner's attention has hinted at the existence of anything more serious such as illegal disposition of firearms.[1]

---

[1]  Petitioner has never been involved in any criminal problems or been unable to satisfactorily respond to any law enforcement requests to trace firearms it dealt in. Cole Affidavit, paragraphs 4 and 5.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 7**

In summary, Petitioner has described an already crippled business situation that will probably result in Petitioner being out of business before its rights are vindicated by this Court. In this confrontation, Petitioner faces ruin unless it is allowed to continue business until its rights are finally decided, while Respondent has everything to gain and nothing to lose. One cannot imagine a more clearly unbalanced "sliding scale" than this. Confronted with a similar situation concerning a license issued by the Department of Agriculture to operate as a dealer under the Perishable Agricultural Commodities Act, the Court in *Fine Foods, Inc. v. U.S. Department of Agriculture,* 274 F.3d 1137, 1140 (7th Cir. 2001) observed that if the Government, "is wrong and Finer Foods [petitioner] remains a viable concern, then allowing the suspension [of its license] to continue may kill it ~ and the United States does not afford a damages remedy to firms put out of business by administrative high-handedness."

**B.     PETITIONER CAN DEMONSTRATE A PROBABILITY OF SUCCESS ON THE MERITS OR, ALTERNATIVELY, SERIOUS QUESTIONS GOING TO THE MERITS**

**1.     18 U.S.C. § 923(f)(2) Requires A Stay While Judicial Review Is Pending**

A preliminary injunction should issue if the movant demonstrates <u>either</u> a probability of success on the merits and irreparable injury, or serious questions going to the merits and a balance of hardships that tips sharply in its favor. As demonstrated above and as documented by Mr. Cole's Affidavit (see paragraphs 11 through 18), all the hardship in this controversy is borne by Petitioner, while the only detriment Respondent would suffer by the imposition of a preliminary injunction, would be a few months delay in putting Petitioner out of business, z/its decision passes judicial muster.

In addition to the relative hardships of the parties, the Ninth Circuit also directs the trial Court to weigh either Petitioner's likelihood of success or whether serious questions going to the merits exist. While the latter, much less demanding standard, comes into play

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 8**

where disproportionate hardship is clearly demonstrated as it has been in this case, Petitioner nevertheless believes that the propriety of Respondent's actions is doubtful on their face and Petitioner's likelihood of success is correspondingly high.

First, pursuant to 18 U.S.C. § 923(f)(2), the ATF has no authority to limit Petitioner's acquisitions and dispositions of firearms until a full review of its actions, *both* administratively and then judicially, is folly concluded.

18 U.S.C. § 923(f)(2) provides:

> If the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation. <u>In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license stay the effective date of the revocation.</u> A hearing held under this paragraph shall be held at a location convenient to the aggrieved party.

(Emphasis added).

Petitioner requested, prior to the administrative hearing, that ATF stay the effective date of the revocation, which the ATF did. The stay remained in place following the February 25, 2010 administrative hearing, until Petitioner's received the Final Notice. It was not until the Final Notice was received by Petitioner that ATF took the position that the stay was not effective pending judicial review. Cole Affidavit, paragraph 8.

The above underscored language in § 923(f)(2) is plain: upon request of the licensee, the Attorney General "shall" stay the effective date of the revocation. But then, if the Attorney General "decides not to reverse his decision" to "revoke a license," § 923(f)(3) only mandates the Attorney General to "give <u>notice</u> of his decision to the aggrieved party." (Emphasis added). No provision of the statute authorizes the Attorney General to *terminate* the stay granted under § 923(f)(2) or to implement the revocation; it simply requires the Attorney General to give "notice" of his decision to the licensee, which begins the 60 day period for seeking judicial

review. Indeed, to the contrary, § 923(f)(3) allows the licensee "sixty days after the date notice was given" to "file a petition with the United States district court... for a de novo judicial review of such . .. revocation."

Had Congress intended that the Attorney General's giving <u>notice</u> of his decision to the licensee concomitantly authorized the Attorney General to terminate the stay, Congress surely would have required the Attorney General to do more than merely "give notice" of his decision. Certainly Congress was aware that, if a licensee's operations were terminated upon receipt of notice of the Attorney General's decision, the right to judicial review would, as a practical matter, be meaningless and a licensee, as is the case here, would effectively be deprived of meaningful judicial review. The Supreme Court, however, has "often noted that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Lindahl v. OPM,* 470 U.S. 768, 778 (1985) (internal quotations and citations omitted). No such clear and convincing evidence of a contrary legislative intent is present in § 923.

Indeed, it would be illogical for Congress to mandate the Attorney General to stay the effective date of the revocation pending the outcome of an administrative hearing (which has little of the indicia of a proceeding in which there is an opportunity to be heard in a "meaningful manner," *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965))[2] but not continue the stay while de

---

[2] Witnesses are not under oath, the licensee cannot issue subpoenas, the hearing officer is an ATF inspector (not an administrative law judge, or even a person with legal training), and the hearing officer does not rule on offers of proof. Indeed, the participation of an ATF inspector as the hearing officer deprives the licensee of due process:

> Before one may be deprived of a protected interest, whether in a criminal or civil setting (citation omitted), one is entitled as a matter of due process of law to an adjudicator who is not in a situation "which would offer a possible temptation to the average man as a judge . . . which might lead him not to hold the balance nice, clear

novo judicial review (in which additional evidence may be proffered) is underway.

That Congress did not intend that § 923(f)(2) was limited to the pendency of the administrative process is bolstered by 18 U.S.C. § 925(b):

> A licensed importer, licensed manufacturer, licensed dealer, or licensed collector who is indicted for a crime punishable by imprisonment for a term exceeding one year, may, notwithstanding any other provision of this chapter, continue operation pursuant to his existing license (if prior to the expiration of the term of the existing license timely application is made for a new license) during the term of such indictment and until any conviction pursuant to the indictment becomes final.

If a criminal prosecution is initiated against a licensee (presumably for offenses more serious than those calling for a license revocation), the licensee may, ironically, continue operations until any conviction pursuant to the indictment becomes final.[3]  If 18 U.S.C. §923(f)(2) does not authorize a licensee's continued operations pending judicial review, the licensee would ironically have greater protection if he is the subject of a criminal prosecution than if he is the subject of a license revocation. Surely Congress did not mean to create such an anomaly. The better view is that Congress intended (as it plainly stated) that the stay of a revocation applies to the pendency of judicial review as well as the pendency of the administrative process.

---

and true. . . ." (citations omitted). Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator.

*Concrete Pipe & Products of Col., Inc.* v. *Construction Laborers Pension Trust for Southern Cal,* 508 U.S. 602, 617-618 (1993). Even if the August 8, 2006 hearing was "an not a formal hearing on the record subject to §4 of the Administrative Procedure Act, 5 U.S.C. § 554, it is certainly an informal adjudication in that the decision should have been made after a hearing by someone without a stake in the outcome. *See Pension Benefit Guaranty Corp.* v. *LTV Corp.,* 496 U.S. 633, 110 S. Ct. 2668, 110 L. Ed.2d 579 (1990)." *Fine Foods, Inc.* v. *U.S. Dept. of Agriculture,* 274 F.3d at 1140.

[3]   ATF has long taken the position that a conviction does not become final "until all appeals have been exhausted." Memorandum To: District Counsel (North-Atlantic Region), From: Assistant Chief Counsel (Litigation), dated 4/15/86.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 11**

Further, the regulation which purports to grant to ATF the discretionary authority to stay a revocation, 27 C.F.R. §478.78, lacks statutory authority.

It is well-established that the:

> . . . rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.

*Ernst & Ernst* v. *Hockfelder,* 425 U.S. 185, 213-214 (1976) (internal quotations and citations omitted).

Thus, "an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *FDA* v. *Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 161 (2000). A review of § 923(e) and (f) reveals no such grant of authority.[4] Accordingly, 27 C.F.R. § 478.78 is void and the revocation of Petitioner's license will likely be reversed on final judgment. The revocation should therefore be stayed until the Court has reached its final decision.

2.  **There Is a Material Question of the Meaning of the Term "Willfully" as Used by Respondent to Justify the License Revocation**

---

[4] No deference is due ATF's reading of the statute since it is not ambiguous. Congress plainly did not delegate authority to ATF to promulgate 27 C.F.R. § 478.78. See *Gonzales* v. *Oregon,* 126 S.Ct. 904 (2006):

> An interpretation of an <u>ambiguous</u> statute may also receive substantial deference. *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-845 (1984). Deference in accordance with *Chevron,* however, is warranted only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States* v. *Mead Corp.,* 533 U.S. 218, 226-227 (2001).

126 S. Ct. 914-15 (emphasis added).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 12**

Respondent's justified the suspension of Petitioner's firearms license by finding that Petitioner "willfully" violated several statutes, primarily 18 U.S.C. §§ 922(m), (t) and 923(g)(1)(A), and Regulations.

18 U.S.C. § 923(e) provides in pertinent part:

> The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter....

In *Perri* v. *Department of Treasury, 637* F.2d 1332 (1981) and *Cucchiara* v. *Secretary of the Treasury*, 652 F.2d 28 (1981), the Ninth Circuit held that 18 U.S.C. § 923(e), which did not then include a willfulness, should be interpreted to include a willfulness element because § 923(d)(1)(C) (which established license eligibility) mandated issuance of a license if the applicant "has not willfully violated any of the provisions of this chapter or regulations issued thereunder . .. ." Further, *Perri* and *Cucchiara* held that "willfully" meant that a licensee acted with either purposeful disregard of, or was plainly indifferent to, his legal obligations.

In 1986, Congress added the term "willfully" to 18 U.S.C. § 923(e) by Section 103(5) of the Firearms Owners Protection Act of 1986 ("FOPA"), Pub. L. 99-308, 100 Stat. 449, 453 (1986); the identical word was also added by Section 104(a)(1) of FOPA to 18 U.S.C. § 924(a)(1).[5] Thus, there is a serious question whether *Perri* and *Cucchiara* remain good law as

---

[5] FOPA amended § 924:

> . . . to add a scienter requirement as a condition to the imposition of penalties for most of the unlawful acts defined in § 922. For three categories of offenses the intent required is that the defendant acted "knowingly"; for the fourth category, which includes "any other provision of this chapter," the required intent is that the defendant acted "willfully."

*Bryan* v. *United States*, 524 U.S. 184, 188 (1998).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 13**

they long predated the enactment of the FOPA and the Supreme Court's decision in *Bryan*. See *United States v. State of Washington*, 872 F.2d 874, 880 (9th Cir. 1989) ("'We are bound by decisions of prior panels' unless an en banc decision, Supreme Court decision, or subsequent legislation undermines those decisions").

In *Bryan v. United States*, 524 U.S. 184 (1998), the Court interpreted the term "willfully" in 18 U.S.C. § 924(a)(1) and approved a jury instruction which defined "willfully" as follows:

> A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids.

524 U.S. at 190.

The *Bryan* definition of "willfully" is equally applicable in both criminal and civil proceedings. In *Commissioner v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159 (1993), the Court held that it "is a 'normal rule of statutory construction' (citation omitted) that 'identical words used in different parts of the same act are intended to have the same meaning' (citation omitted)." Under the Gun Control Act ("GCA")(Chapter 44 of Title 18, § 921 *et seq.*), the single meaning rule applies with even greater force because the "willfully" requirement was established in both the criminal penalties provision of the GCA (§ 924(a)(1)) and the license revocation provision of the GCA (§ 923(e)) by the same act of Congress, the FOPA. See FOPA Sections 103(5) and 104(a)(1).

Congress' intent that "willfully" be interpreted in the license revocation provision of the GCA in the same fashion as in the criminal penalties provision of the GCA is emphasized by the enactment in Section 103(6)(B) of the FOPA 6f § 923(f)(4), which links a license revocation proceeding to a criminal proceeding:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 14**

> If criminal proceedings are instituted against a licensee alleging any violation of this chapter or of rules or regulations prescribed under this chapter, and the licensee is acquitted of such charges, or such proceedings are terminated, other than upon motion of the Government before trial upon such charges, the Attorney General shall be absolutely barred from denying or revoking any license granted under this chapter where such denial or revocation is based in whole or in part on the facts which form the basis of such criminal charges.

The legislative history of the FOPA confirms the single meaning of "willfully." In Section 104(a)(1) of the FOPA, Congress added the willfulness element to the criminal penalties provision of the GCA (§ 924(a)(1), the provision interpreted in *Bryan, supra)*. S. Rep. No. 98-583 stated:

> The purpose of that change was to avoid prosecutions in cases where, for instance, a licensee carelessly committed a technical record-keeping violation or other minor, inadvertent infraction.

S.Rep. No. 98-583 at 94.[6]

S. Rep. No. 98-583 described the purpose for adding "willfully" to § 923(e) in almost identical terms: the "purpose of this change is to ensure that licenses are not revoked for inadvertent errors or technical mistakes." S. Rep. No. 98-583 at 88. These comments are particularly apropos of the instant controversy where are all of Petitioner's errors consist of "technical record-keeping violation[s]."

---

[6] In *National Rifle Ass'n v. Brady,* 914 F.2d 475, 485 (4th Cir. 1990), the Fourth Circuit observed that S.Rep. No. 98-583 was the applicable report for FOPA:

> There was no Senate Report on Pub.L. No. 99-308. S.Rep. No. 98-583 accompanied S. 914, the substantially similar predecessor to S. 49, the Senate bill which was the basis for Pub.L. No. 99-308.

914 F.2d at 485.

Thus, S. Rep. No. 98-583 should be accorded substantial weight because a "committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Zuber* v. *Allen,* 396 U.S. 168, 186 (1969).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 15**

Accordingly, it is evident that Congress intended that "willfully" have the same meaning in §

924(a)(1) and § 923(e), and that, because it means "act[ing] intentionally and purposely and

with the intent to do something the law forbids, that is, with the bad purpose to disobey or to

disregard the law" in § 924(a)(1), it has that meaning in § 923(e).

S. Rep. No. 98-583 also stated that the addition of "willfully" would:

> . . . codif[y] current case law by requiring "willful" violations
> of Chapter 44 as a ground for license revocation, just as a
> "willful" violation of Chapter 44 would preclude mandatory
> issuance of a license under 18 U.S.C. 923(d)(1)(C) and (D).[fn]

S. Rep. No. 98-583 at 88.

The "current case law" (which had construed § 923 as including a "willfully" element in a

license revocation proceeding) is set forth in the footnote; the primary case cited, and the only

case quoted by the Committee Report, is *Rich* v. *United States,* 383 F. Supp 797 (1974). The

court in that case explained that, if "willfulness" need not be proved by ATF, a license could be

revoked for "error, inadvertence, or simple ignorance of regulation" and noted that the "Secretary

has urged that 'willful' be deemed to include careless disregard . . ." 383 F. Supp. at 800. *Rich*

rejected that standard because "Congress was concerned with purposeful, intentional conduct to

be punished by revocation of licenses rather than mere negligence on the part of the licensee."

383 F. Supp. at 800.

In light of the committee's citation and quotation of *Rich,* it is clear that the committee

adopted the reasoning of *Rich.* Because a court's objective "is to ascertain the congressional intent

and give effect to the legislative will," *Philbrook v. Glodgett,* 421 U.S. 707, 713 (1975), and that

intent is expressed by S. Rep. No. 98-583, "willfully" must be interpreted to mean purposeful,

intentional conduct.

In *RSM, Inc.* v. *Herbert,* 466 F.3d 316 (4th Cir. 2006), the Fourth Circuit first stated:

> At its core,... ["willfully"] describes conduct that results from an
> exercise of the will, distinguishing "intentional, knowing, or

voluntary" action from that which is "accidental" or inadvertent. *United States* v. *Illinois Central R.R.,* 303 U.S. 239, 243 (1938) (internal quotation marks and citations omitted); *see also Bryan* [v. *United States,* 524 U.S. 184(1998)] at 191 ("Most obviously, [willfully] differentiates between deliberate and unwitting conduct...."); *Prino* v. *Simon,* 606 F.2d 449, 451 (4th Cir. 1979) (noting that "a conscious, intentional, deliberate, voluntary decision properly is described as willful").

466 F.3d at 320.

The Court of Appeals also stated:

> In a civil action, "willful" generally requires a showing of a disregard for the law, *see Illinois Cent. R.R.,* 303 U.S. at 243-44, or a "reckless" lack of concern for an action's potential illegality, *see e.g., McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 134 (1988) (interpreting "willfully" in the Fair Labor Standards Act to describe an employer that "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute"); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. Ill, 126 (1985) (using the same standard of "willfully" in the Age Employment Discrimination Act). Although this is a civil action to contest the revocation of a firearms license, we construe "willfully" in § 923(e) in accordance with *Bryan's* construction of the term in the criminal context of § 924(a)(1)(D). Congress added "willfully" to both sections by enacting the Firearm Owners' Protection Act of 1986, Pub.L. No. 99-308, 100 Stat. 453, and we presume that Congress intended the same word used multiple times in a single act to carry a consistent meaning. . .. Moreover, "willful" violations of the Gun Control Act can lead to *either* a license revocation under § 923(e) *or* a criminal penalty under § 924(a)(1)(D).

466 F.3d at 321, n.1.[7]

The Fourth Circuit in *RSM* also expounded upon the "plain indifference" test, stating:

> To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet *at some point,* when such errors continue or even increase in the face

---

[7] Indeed, with respect to "willfully" in the Gun Control Act ("GCA") (Chapter 44 of Title 18, §921 *et seq.*), the single meaning rule applies with even greater force because "willfully" was established in both the criminal penalties provision of the GCA (§ 924(a)(1)) and the license revocation provision of the GCA (§ 923(e)) by the same act of Congress, the FOPA. See FOPA Sections 103(5) and 104(a)(1).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 17**

of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee <u>simply does not care</u> about the legal requirements. *At that point,* the failures show the licensee's plain indifference and therefore become willful.

466 F.3d at 322 (emphasis added).

Thus, the Fourth Circuit adopted *Bryan's* formulation concerning intent, but applied it to mean that such intent may be inferred if the evidence is that the licensee "simply does not care about the legal requirements." 466 F.3d at 322.

The Fourth Circuit also noted the holding of *Willingham Sports, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives,* 415 F.3d 1274, 1277 (11th Cir.2005) ("[A] showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness for purposes of § 923(d)(1)(C)"). 466 F.3d at 321. At the cited page of *Willingham Sports, Inc.,* the Eleventh Circuit adopted the explanation of "willfully" set forth in *J.A.M. Builders, Inc.* v. *Herman,* 233 F.3d 1350 (11th Cir. 2000):

> to be deemed "willful," proof must be adduced either that (1) "[the] employer knew of an applicable standard or provision prohibiting the conduct or condition and <u>consciously disregarded the standard,"</u> or (2) that, if the employer did not know of an applicable standard or provision's requirements, it exhibited such "reckless disregard for .. . the requirements of the law generally that one can infer that... the employer would not have cared that the conduct or conditions violated [the standard]." (citation omitted).

233 F.3d at 1355 (emphasis added).

This Court should also be aware that the Solicitor General of the United States, on November 13, 2006, filed an *amicus curiae* brief in the United States Supreme Court in the consolidated cases of *Safeco Insurance Company Of America, et a* l, v. *Burr, et al.,* No. 06-84, and *GEICO General Insurance Company, et al.* v. *Edo,* No. 06-100 (which were argued on January 16, 2007). These cases concern, *inter alia,* the meaning of "willfully" in a civil statute, to wit, in the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.,* which imposes civil liability on

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 18**

"[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer," 15 U.S.C. 1681n(a). In that brief, the Solicitor General noted that, in *TWA, Inc. v. Thurston*, 469 U.S. 111 (1985),[8] the Supreme Court held that liquidated damages for "willful violations" of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. 601 *et seq.*, "required proof that the defendant 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" Brief at 9-10. The Solicitor General went on to argue, that:

> when Congress's aim is to enforce federal rights and to induce regulated entities' attention and adherence to the obligations of federal law, Congress has a long tradition of employing the reckless-disregard standard to accomplish that end.

Brief at 10.

Importantly for this case, the Solicitor General then stated:

> <u>That same recklessness standard governs liability provisions in other federal laws, like</u> (i) the Family and Medical Leave Act, 29 U.S.C. 2617(c)(2) (statute of limitations)(footnote omitted); (ii) the Occupational Safety and Health Act, 29 U.S.C. 666(a) (civil penalties)(footnote omitted); (iii) the Copyright Act, 17 U.S.C. 504(c)(2)(footnote omitted); and (iv) <u>firearms licensing, 18 U.S.C. 923(e)</u> (Supp. IV 2004) [FN 10].

Brief at 11 (emphasis added).[9]

The Solicitor General explained that recklessness "bespeaks an aggravated or extreme departure from standards of ordinary care." Brief at 21. According to the Solicitor General:

> Proof of such an aggravated deviation from the standard of ordinary care is necessary because "reckless disregard" is designed to capture two acute forms of culpability. The reckless-disregard standard reaches conduct that is so wrongful under the circumstances that it is a proxy for or functionally equivalent to knowing or intentional conduct, which can in some contexts be difficult to prove, (footnote

---

[8] The Fourth Circuit in *RSM* also cited *TWA, Inc.* v. *Thurston, supra*, 466 F.3d at 21, n.1.

[9] Notably, the Solicitor General cited the Fourth Circuit's *RSM* decision as authority for this assertion: "FN10. See *RSM, Inc.* v. *Herbert*, No. 06-1393, 2006 WL 3026344, at *5 (4th Cir. Oct. 26, 2006) ("deliberate disregard" or "plain indifference")." Brief at 11.

omitted). But when couched (as in the FCRA) in terms of reckless disregard of the law, the recklessness standard also captures failures to conform behavior to the law that are so extreme as to independently merit censure.

Brief at 21-22 (emphasis added).

Thus, under the Solicitor General's construction of "willfully," which the Solicitor General has asserted to the Supreme Court applies equally to "firearms licensing, 18 U.S.C. 923(e)," this Court must find that Red's actions were "an aggravated or extreme departure from standards of ordinary care" for those actions to be willful.

The question in the present litigation, therefore, is whether Respondent had, indeed, shown that Petitioner "willfully" violated regulations which required completion of the Form 4473 for the disposition of firearms. More precisely, the question is whether a limited number of specific items in these Forms were not filled in or filled in incorrectly. What appears to be nothing more than clerical errors occurring in a distinct minority of the records regularly Petitioner is most logically attributable to simple clerical errors other than to any "willful" decision by Petitioner to avoid its responsibilities.[10] Given the lack of clarity in the statutes ~ which may, however, be corrected by the analysis set forth above ~ it is more than likely that the Final Notice was issued without the requisite factual showing of willful misconduct. Given such doubt, the" serious question going to the merits" element of the Ninth Circuit's "two- prong" test for the issuance of a preliminary injunctive relief is satisfied.

## C.   THERE ARE SUBSTANTIAL QUESTIONS OF FACT PERTAINING TO RESPONDENT'S FINAL NOTICE

As reflected by Mr. Cole's Affidavit, several of the bases for the revocation of its license

---

[10] Petitioner has, in addition to objecting to the sufficiency of the alleged violations to support a revocation of its license, further asserted that its errors, being almost exclusively ones of clerical recordkeeping, were inadvertent and technical and should not be reasons to destroy its business.

ignored factual evidence which may now he presented to the Court in its de novo consideration of this matter.

Specifically, and as related in Count V through XVI of its Petition, Petitioner is accused of having willfully violated Form 4473 requirements. As set forth in the Petition and in Mr. Cole's Affidavit, the ATF's administration hearing officer found these violations to be not willful.

As related in its Petition, Respondent further contended that Petitioner failed to record NCIS information; however, that system is not employed in the State of California and there can be no violation of NCIS reporting requirements. Cole Affidavit, paragraph 19.

### D.   THE COURT SHOULD NOT REQUIRE SECURITY TO BE POSTED BY PETITIONER

Federal Rule of Civil Procedure 65(c) provides that a preliminary injunction shall not issue except upon the applicant providing such security as the Court deems "proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found have been wrongfully enjoined or restrained." The amount of such security is left to the Court's discretion. Moore's Federal Practice 3D, § 65.50[1]. The Court has discretion to waive the requirement entirely in appropriate cases. Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2005).

There is no need to demand security from Petitioner for the preliminary injunction sought herein. As discussed above, the balance of hardship entirely favors Petitioner. Conversely, Respondent will experience no damage, even if the preliminary injunction is improvidently granted, other than a delay of the effectiveness of its revocation of Petitioner's license.

### III. CONCLUSION

In bluntest terms, Petitioner is threatened with the destruction of its business for a limited number of alleged clerical oversights and errors, most which concern the completion of a Form that,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS LITIGATION - 21**

itself, will be shown have made provisions for information that is either duplicative or not required

by the relevant statutes or the regulations those statutes authorize. Implicitly acknowledging the

gravity of a license revocation, 18 U.S.C. § 923(f)(2) requires the Attorney General to suspend the

effectiveness of any license revocation while the licensee seeks administrative review. It will hardly

be any greater burden on Respondent that this stay of effectiveness should continue through the de

novo judicial review that is authorized, with equal specificity, by 18 U.S.C. § 923(f)(3). Moreover,

the demonstrated likelihood that Petitioner's business will be substantially and irreparably damaged,

if not entirely destroyed, well before the Court determines whether Respondent's actions were

justified in the first place makes it imperative that the license revocation be stayed in the meantime,

lest Petitioner's right to de novo judicial review be reduced to an empty formality.

DATED:      August 4, 2010                    GRIMM & SCHOLNICK

                                        by:  _____
                                             ROBERT M. SCHOLNICK
                                             Attorneys for Petitioner

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S
MOTION FOR A PRELIMINARY INJUNCTION, STAYING EFFECTIVENESS OF THE
REVOCATION OF ITS FEDERAL FIREARMS LICENSE DURING THE PENDENCY OF THIS
LITIGATION - 22**